IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TEXANS AGAINST GOVERNMENTAL WASTE AND UNCONSTITUTIONAL GOVERNMENTAL CONDUCT, ET AL. | § § § § | |
| VS. | § § | CIVIL NO. 4:08-CV-744-Y |
| UNITED STATES DEPARTMENT OF THE TREASURY, ET AL. | § § | |

ORDER OF DISMISSAL

Pending before the Court is the response (doc. #12) to the Court's order to show cause, filed by plaintiffs Matthew Kelly and Texans Against Governmental Waste and Unconstitutional Government Conduct.  After review of the response, the Court concludes that Plaintiffs have not established standing in this case. Accordingly, their case will be dismissed.

I.   Background

As has been set out in the Court's previous orders, on December 16, 2008, Plaintiffs filed their original complaint.  Therein, Plaintiffs aver that any distribution of funds to U.S. automobile manufacturer from the Troubled Asset Relief Program ("TARP") established by the Emergency Economic Stabilization Act of 2008, 12 U.S.C. 5201, et seq. ("the Act"), is unlawful.  In support, Plaintiffs posit that the legislature has approved the distribution of TARP funds only to "financial institutions" as defined in the act, 12 U.S.C. § 5202(5), and that U.S. automobile manufacturers do not fit this definition.  Plaintiffs contend that despite this

limitation on the use of TARP funds, members of the executive branch, including former President George W. Bush and the Secretary of the Department of the Treasury, have approved the distribution of such funds to U.S. automakers and that such action by executive-branch officials is unconstitutional.

Based on these allegations, Plaintiffs filed a motion for an ex parte temporary restraining order. The Court denied the motion, noting that the Act requires that a motion for injunctive relief be ruled upon within three days of filing. *See* 12 U.S.C. § 5229(2)(B). Because Plaintiffs failed to bring this limitation to the Court's attention in their motion, the Court did not rule on the motion in the required time. The Court further concluded that Plaintiffs failed to fulfill the requirements imposed by Federal Rule of Civil Procedure 65(b) in seeking ex parte injunctive relief.

Plaintiffs filed a second motion for temporary restraining order, this time requesting that the Court rule on the motion within three days of filing. The Court denied the motion, noting that Plaintiffs had again failed to fulfill the requirements of Rule 65(b) to secure ex parte relief. The Court noted further that a federal court has no authority to grant injunctive relief until jurisdiction over the case and the parties is established and that Plaintiffs had yet to establish that they had standing, as taxpayers, to challenge the legislature's appropriation, or the executive's expenditure, of taxpayer funds. *See Enterp. Int'l, Inc.*

2

*v. Corporacion Estatal Petrolera Ecuatoriana District*, 762 F.2d 464, 470-71 (5th Cir. 1985). Consequently, Plaintiffs were ordered to respond and show cause as to why their case should not be dismissed for lack of standing.

II. Discussion

    A.  Standing Overview

The doctrine of standing derives from both constitutional limitations and prudential concerns. The "case or controversy" requirement of Article III to the Constitution mandates that in order to have standing to pursue a cause, a plaintiff must establish three things. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (alterations in original) (citations and quotations omitted). For an injury to be sufficiently particularized, it "must affect the plaintiff in a personal or individual way." *Id.* at 561 n.1. Limiting standing to those that have personally suffered an individualized injury ensures that those before a court have such

a stake "in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

Standing is also limited by separation-of-powers considerations. *See Lujan*, 504 U.S. 576 (congressional attempt to create "procedural right" to litigate generalized grievance invaded executive's duty to enforce the law under Article II). The federal judiciary's refusal to unnecessarily rule upon the lawfulness of the acts of the coordinate branches of government is a function of Article III's case-or-controversy requirement. "[T]he 'case or controversy' requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." *See Allen v. Wright*, 468 U.S. 737, 750 (1984). As a plurality opinion recently explained:

> The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The federal courts are not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution. Rather, federal courts sit solely, to decide on the rights of individuals and must refrai[n] from passing upon the constitutionality of an act . . . unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it.

*Hein v. Freedom from Religion Found, Inc.*, 127 S. Ct. 2553, 2562 (2007) (plurality opinion)(alterations in original)(citations and quotations omitted).

Indeed, maintenance of the judiciary's proper role within our government and the "tripartite allocation of power set forth in the Constitution" is the most important basis for the doctrine of standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); *Allen*, 468 U.S. at 752 (the law of standing "is built on . . . the idea of separation of powers"). "If the judicial power extended to every question under the constitution . . . [t]he division of power [among the branches of government] could exist no longer, and the other departments would be swallowed up by the judiciary." *DaimlerChrysler Corp.*, 547 U.S. at 341 (citing 4 Papers of John Marshall 95 (C. Cullen ed. 1984) (second alteration in original)). Limiting standing to appropriate litigants prevents the judiciary from "assum[ing] a position of authority over the governmental acts of another and co-equal [branch]" and from "becom[ing] virtually continuing monitors of the wisdom and soundness of" the actions of the other branches of government. *Lujan*, 504 U.S. at 577; *see also Allen*, 468 U.S. at 759. Thus, separation-of-powers considerations, as they bear upon standing, restrain the federal courts to their "proper--and properly limited--role . . . in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Finally, the doctrine of standing is shaped by certain "prudential" considerations. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-17 (2004). The United States Supreme Court

has "explained that prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Id.* at 12.  Such considerations are "closely related to Art. III concerns."  *Id.*

Even so, the requirement that a plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief" is "a core component [of standing] derived directly from the Constitution."  *Allen*, 468 U.S. at 751.  On the other hand, unless adjudication of an issue is shown to be truly necessary, a court may rely upon prudential considerations of self-restraint in declining to pass upon an issue presented to it.  *See Elk Grove Unified Sch. Dist.*, 542 U.S. at 11.  This is so even in cases that fall within Article III's grant of federal jurisdiction.  *See id.*  In this way prudential considerations are "essentially matters of judicial self-governance."  *Id.*

Aside from these general observations on standing, Plaintiffs' contentions give rise to more specific standing issues.  The essence of Plaintiffs' contention is that executive-branch officials, in distributing taxpayer funds set aside under TARP to auto manufacturers, have acted beyond the authority granted by the Act.

This complaint, along with the arguments raised in Plaintiffs' response, evokes both taxpayer and citizen-standing concerns

### 1. Taxpayer Standing

Since the Supreme Court's seminal taxpayer-standing case, *Frothingham v. Mellon*, 262 U.S. 447 (1923), it has been clear that a citizen has no standing to challenge how the government spends taxpayer funds based on no more than his status as a taxpayer. *Id.* at 487-88. A taxpayer's interest in the government's expenditure of tax funds is "comparatively minute and indeterminable." *Id.* at 487. That is, the taxpayer does not suffer the particularized individual harm required to support standing but instead "merely . . . suffers in some indefinite way in common with people generally." *Id.* at 488; *see Hein,* 127 S. Ct. at 2563 (taxpayer has no standing to pursue claim based on interest in seeing tax funds spent in accordance with the law).

An exception to the general rule against granting taxpayers standing to challenge the government's spending of taxpayer funds was announced in *Flast v. Cohen*, 392 U.S. 83 (1968). In *Flast,* the Court stated that in order to have standing:

> First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory

> statute. . . .  Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged.  Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

*Id.* at 102-103 (citation omitted).

This exception has proven extremely limited.  Because the test requires a logical link between the status of taxpayer and a legislative enactment under Art. I, § 8, the *Flast* exception cannot be used to challenge actions by the executive branch.  *See Hein*, 127 S. Ct. at 2566-67 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 479 (1982)).  Moreover, only the Establishment Clause has been held to be the sort of specific constitutional limitation on Congress's taxing and spending power contemplated by *Flast*.  *DaimlerChrysler Corp.*, 547 U.S. at 347.

      2.  Citizen Standing

"[A]ssertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning."  *See Allen*, 468 U.S. at 754.  Rather, in order to have standing, the plaintiff must have suffered some personal, individualized injury or "injury in fact."  *Lujan*,

504 U.S. 560-61; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 219 (1974) (stating, in the context of a citizen standing analysis, that Article III's "case or controversy" requirement embodies a requirement of "injury in fact").

Of course citizens are not wholly barred from challenging "the legality of government action or inaction." *Lujan*, 504 U.S. at 561. If "the plaintiff is himself an object of the action (or forgone action) at issue . . . there is ordinarily little question that" he has standing to bring suit challenging such action or inaction. *See id.* at 561-62. But standing "to sue may not be predicated upon an interest of the kind . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger*, 418 U.S. at 220; *see also Lance v. Coffman*, 127 S. Ct. 1194, 1198 (2007) (plaintiffs had no standing because "the only injury [they] allege is that the law . . . has not been followed"); *Lujan*, 504 U.S. at 573 (injury-in-fact requirement not met by assertion of "'right' to have the Executive observe the procedures required by law"); *Valley Forge*, 454 U.S. at 482-83 ("This Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law . . . .").

B.  Analysis

   1.  Taxpayer Standing

Plaintiffs' suit challenges the Department of the Treasury's distribution of taxpayer funds set aside under TARP to U.S. automobile manufacturers. Because Plaintiffs are challenging the actions of an executive-branch agency and executive-branch officials, they may not rely on *Flast's* taxpayer-standing exception. As noted, *Flast*'s exception applies only to challenges to legislative enactments under Art. I, § 8. *Hein*, 127 S. Ct. at 2566-67.

This is not to say that any time funds are appropriated by Congress to be spent by the executive in its discretion that taxpayer standing does not lie. For instance, in *Bowen v. Kendrick*, 487 U.S. 589 (1988), the Court determined that taxpayers had standing to challenge the Adolescent Family Life Act (AFLA) which authorized federal grants to private community groups, including religious groups. As a plurality of the Supreme Court later explained in *Hein v. Freedom from Religion Found, Inc.*:

> The Court [in *Bowen*] found a sufficient nexus between the taxpayer's standing as a taxpayer and the congressional exercise of taxing and spending power, notwithstanding the fact that the funding authorized by Congress ha[d] flowed through and been administered by an Executive Branch official.
>
> But the key to that conclusion was the Court's recognition that AFLA was at heart a program of disbursement of funds pursuant to Congress' taxing and spending powers, and that the plaintiffs' claims call[ed] into question how the funds authorized by Congress [were]

> being disbursed *pursuant to the AFLA's statutory mandate*. AFLA not only expressly authorized and appropriated specific funds for grant-making, it also expressly contemplated that some of those moneys might go to projects involving religious groups. Unlike this case, Kendrick involved a program of disbursement of funds pursuant to Congress' taxing and spending powers that Congress had created, authorized, and mandate[d].

*Hein*, 127 S. Ct. at 2567 (citations and quotations omitted) (alterations and emphasis in original).

Conversely, Plaintiffs argue that the Department of the Treasury's distribution of funds to auto manufacturers is clearly outside of the authority granted by TARP. In *Valley Forge Christian College v. Americans United for Separation of Church and State*, the Supreme Court concluded that the plaintiffs in that case had not satisfied *Flast*'s exception, notwithstanding the fact that the executive-branch action being challenged was at least "arguably authorized" by legislation. *Valley Forge*, 454 U.S. at 479 & n.15. Thus, Plaintiffs' contention in this case that the executive's use of TARP funds is contrary to, or outside of the authority granted by, TARP clearly places them outside of *Flast*'s exception. *Cf. Hein*, 127 S. Ct. at 2566 (describing the plaintiffs in *Hein* as even farther removed from fulfilling the *Flast* exception than the plaintiffs in *Valley Forge*).

Nor can Plaintiffs satisfy the second portion of *Flast*'s exception. Plaintiffs do not allege that the executive's use of TARP funds violates the Establishment Clause. *DaimlerChrysler Corp.*, 547 U.S. at 347 (noting *Flast* has been limited to challenges

11

based on the Establishment Clause). Consequently, Plaintiffs have not established standing under *Flast*.

    2. Citizen Standing

In their response, Plaintiffs characterize themselves as challenging the Department of the Treasury's distribution of funds under the Act and TARP, rather than challenging the Act itself or its creation of TARP. The Supreme Court has recognized that "[w]hen Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted." *Lujan*, 504 U.S. at 577. Plaintiffs argue that the Act specifically defines financial institution and limits the distribution of TARP funds to such institutions. "Financial institution" is defined as:

> [A]ny institution, including, but not limited to, any bank, savings association, credit union, security broker or dealer, or insurance company, established and regulated under the laws of the United States or any State, territory, or possession of the United States, the District of Columbia, Commonwealth of Puerto Rico, Commonwealth of Northern Mariana Islands, Guam, American Samoa, or the United States Virgin Islands, and having significant operations in the United States, but excluding any central bank of, or institution owned by, a foreign government.

12 U.S.C. § 5202(5).

On its face, this definition would not appear to include automobile manufacturers. And the terms of the Act do seem to limit the use of TARP funds to assisting financial institutions. *See* 12

U.S.C. § 5211(a)(1) (authorizing the Secretary of the Treasury to purchase troubled assets, as defined by the act, from "financial institutions"). Plaintiffs' arguments have even more persuasive force given that a bill, HR 7321, specifically designed to authorize the distribution of TARP funds to auto manufactures passed the United States House of Representatives. *See* GovTrack.us. H.R. 7321--110th Congress (2008): Auto Industry Financing and Restructuring Act, GovTrack.us (database of federal legislation) <http://www.govtrack.us/congress/bill.xpd?bill=h110-7321> (accessed Apr 28, 2009). Passage of that bill by the House, even though not ultimately enacted, raises the question of why was such a bill necessary if the Act already authorized the distribution of TARP funds to the auto industry?

Nevertheless, whatever the merit of Plaintiffs' underlying arguments, they have no standing to pursue them. Although a federal agency is limited to the authority legislatively granted to it, this does not create standing in individual citizens to challenge actions that arguably exceed such authority based on a generalized injury. *Lujan*, 504 U.S. at 577. Instead, the fact that the authority of a federal agency is limited permits the courts to review the acts of administrative bodies "only to the extent necessary to protect justiciable *individual* rights against administrative action fairly beyond the granted powers." *Id.* (emphasis added). The Supreme Court explains in *Lujan* that recognizing that federal agencies are

13

of limited authority--

> [I]s very far from assuming that the courts are charged more than administrators or legislators with the protection of the rights of the people. Congress and the Executive supervise the acts of administrative agents. . . . **But under Article III, Congress established courts to adjudicate cases and controversies as to claims of infringement of individual rights whether by unlawful action of private persons or by the exertion of unauthorized administrative power.**

*Id.* (alteration in original) (emphasis added) (quoting *Stark v. Wickard*, 321 U.S. 288 (1944)). A citizen's assertion of the "right to have the Executive observe the procedures required by law" does not amount to the sort of justiciable "individual right" referred to in *Lujan*. *Id.* at 573, 578. Consequently, Plaintiffs do not have standing to pursue a complaint that the Department of the Treasury and executive-branch officials have acted beyond the authority granted by the Act.

Plaintiffs distinguish their case from prior citizen-standing cases by clarifying that they do not claim to have standing to assert a complaint that executive-branch officials have exceeded their authority under some statute or constitutional provision. Instead, Plaintiffs explain that it is their position that executive-branch officials have acted in a complete absence of authority in providing TARP funds to auto manufacturers.

But this characterization of the basis of Plaintiffs' complaint still leaves them without standing. Even if there is no authority for the distribution of TARP funds to auto manufacturers, as may

14

well be the case, Plaintiffs' complaint is a generalized grievance based on their interest, shared by all other citizens, in seeing the executive act only as authorized by law. Such a generalized grievance does not satisfy the injury-in-fact aspect of Article III's case-or-controversy requirement.

Moreover, Plaintiffs do not make a true characterization of their complaint. For Plaintiffs to say that no statute has been passed to authorize the Department of the Treasury's use of TARP funds is, essentially, to say that the government is one of limited powers and that the executive must be authorized to spend tax money by legislative enactment. Thus, Plaintiffs' complaint is really that the executive has exceeded the authority given to it by Article II or has invaded Congress's authority under Art. I, § 9, cl.7. *Cf.* U.S. Const. Art. I, § 9, cl.7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ."). But a citizen has no standing to pursue a complaint predicated on "the right, possessed by every citizen, to require that the Government be administered according to law. . . ." *Valley Forge*, 454 U.S. at 482-83. Nor may a federal court be used as a forum to contest "the allocation of power in the Federal System." *United States v. Richardson*, 418 U.S. 166, 174 (1974).

III. Conclusion

The perceived lack of oversight and accountability regarding

the government's use of taxpayer funds to address the nation's economic difficulties has frustrated some Americans. And the perception that there is no way for citizens to challenge the government's acts or demand accountability may be further disheartening. But this Court is bound to apply the constitutional principles announced by the United States Supreme Court. And however unsatisfying is the conclusion that Plaintiffs, as a group of taxpaying citizens, are without standing to challenge a potential transgression by the executive of its authority under the law, it is nevertheless the conclusion dictated by Supreme Court precedent.

Indeed, the Supreme Court has stated that "[t]he assumption that if [the group claiming standing] ha[s] no standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger*, 418 U.S. at 227. Plaintiffs are not, however, without a forum in which to pursue a remedy. "The fact that an individual may disagree with the actions of the executive or the legislature does not constitute harm in a constitutional sense. Rather, to use Justice Scalia's terms, the harm is a "majoritarian one" that entitles the aggrieved to join in a democratic debate ultimately culminating in an election." JAMES LEONARD & JOANNE C. BRANT, THE HALF-OPEN DOOR: ARTICLE III, THE INJURY-IN-FACT RULE, AND THE FRAMERS' PLAN FOR FEDERAL COURTS OF LIMITED JURISDICTION, 54 Rutgers L. Rev. 1, 27 (2001) (discussing ANTONIN SCALIA, THE DOCTRINE OF STANDING AS AN ESSENTIAL ELEMENT OF THE SEPARATION OF POWERS, 17 Suffolk U. L. Rev. 881, 894 (1983)); *see*

*Elk Grove Unified Sch. Dist.*, 542 U.S. at 11 (generalized grievances are more appropriately addressed by representative branch). Thus, Plaintiffs' redress is not in this Court, but instead lies in engaging in the political process.

SIGNED May 26, 2009.

*signature: Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

17